NUMBER 13-06-295-CR



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG 


 


EMERICO GARCIA, II, Appellant,


v.



THE STATE OF TEXAS , Appellee.

 


On appeal from the 105th District Court of Kleberg County, Texas.


 


MEMORANDUM OPINION



Before Justices Yañez, Rodriguez, and Garza


Memorandum Opinion by Justice Yañez


 

 A jury found appellant, Emerico Garcia, II, guilty of burglary of a building under the
law of parties. (1) The trial court assessed punishment at two years' imprisonment,
suspended for five years. The court also imposed restitution, a fine of $1,000.00, and
$318.00 in court costs. On appeal, appellant asserts that the evidence is legally and
factually insufficient to support his conviction, and that he was denied his right to a
unanimous verdict. The State did not file a brief. Because we conclude the evidence is
legally insufficient to show appellant committed burglary of a building, we reverse the trial
court's judgment and render a judgment of acquittal. (2)

I. Background

 On April 21, 2006, appellant and Jose Jimenez, appellant's step-father, were both
indicted on two counts of burglary of a building. As to appellant, the indictment alleged
through two counts that on August 15, 2005, appellant entered a building that was not
open to the public, with the intent to commit theft, and without the effective consent of the
building's owner, Roger Polly. Appellant and Jimenez were tried together and were both
found guilty. (3) As to count one, appellant was found guilty of burglary under the law of
parties. He was found not guilty as to count two.

II. The Evidence

1. Testimony of Roger Polly

 Appellant and Jimenez worked for Roger Polly at the time of the burglary. Items
belonging to Polly were stolen from his "shed" and "Connex building." Roughly 50
videotapes were taken from the Connex building, while a battery charger and two grinders
were taken from the shed. On the evening of August 15, 2005, Polly learned that these
items had been stolen when an employee informed him that Victor Hernandez, who was
also one of Polly's employees, had reported seeing Jimenez take "a bunch of stuff" out of
the shed and Connex building. The next morning, Polly inspected the inside of the two
buildings, whereupon he noticed that various items were missing. Polly then talked to
Hernandez about what he had observed, and the two subsequently contacted law
enforcement authorities.

2. Testimony of Victor Hernandez

 On the morning of August 15, 2005, Hernandez, Jimenez, and appellant went to
Polly's house to paint trailers. When they arrived at Polly's home, Jimenez parked his
vehicle near the Connex building. Later that day, Hernandez and appellant walked to a
nearby pond; from the pond, Hernandez saw Jimenez enter one of the two buildings and
load two boxes into the trunk of his vehicle. He was not able to tell what, if anything, was
contained within the two boxes. Hernandez never witnessed appellant take any items, nor
did he witness appellant assist Jimenez in taking items.

3. Testimony of David Alberto Mendoza

 David Alberto Mendoza is a deputy sheriff with the Kleberg County Sheriff's Office. 
After talking with Polly and Hernandez, Mendoza contacted appellant and asked if he
would come to the sheriff's office to speak with him. Appellant met with Mendoza and
provided him with a written statement, which stated the following:

 Victor Hernandez had told me the [sic] Jose Jimenez had took [sic] a bag full
of videotapes and had put them in the trunk of the car. Jose had told me
and Victor that Mr. Polly was probably going to throw them away anyway. 
On August 18, 2005 is when I had went [sic] to go watch a video with Jose
and from what I saw there was about close to a 100 video's [sic] there at the
house. I was also there when Jose bought that tool set. Jose had also took
[sic] a case of freeon [sic] cans to my grandfathers [sic] house. Victor had
also told me that he also took a bag of videotapes also. When we were
working at Mr. Polly's home Jose would tell me to watch to see if Mr. Polly
was coming and he told me to whistle or throw a rock at the shed. Victor
would also go in there with Jose to see what was in there. I had watched two
videos with Jose and the movies where [sic] Pearl Harbor and an old western
movie. Jose and Victor had taken the bags of videotapes days before and
I knew that they were Mr. Polly's video's [sic] because Jose had told me. I
Emerico H. Garcia II did not take anything from Mr. Polly's home.

 

 I want to add that on the last day of work I had saw [sic] Jose with the paint
pot and he put it in the trunk and we came home and he unloaded it and I
saw that he put it behind his shed. There was a paint gun attached to the
hoses and the pot it's self [sic].


After receiving appellant's statement, Mendoza went to Jimenez's home. (4) When he arrived
at the home, Jimenez's wife (appellant's mother) consented to Mendoza entering the
home. Mendoza recovered several videotapes belonging to Polly inside the home; no
other items belonging to Polly, however, were ever recovered.

4. Additional Witness Testimony

 David Longoria, a patrol lieutenant for the Kleberg County Sheriff's Office, testified
that he observed appellant write his statement to Mendoza. According to Longoria, the
statement was written voluntarily.

 Jimenez testified that he did place two boxes into his trunk as witnessed by
Hernandez, but that the boxes did not contain any items belonging to Polly. With regard
to the videotapes found in his home, Jimenez alleged that the videotapes were given to
him by Hernandez, who claimed to have found them in Polly's trash. Jimenez further
stated that, according to appellant, appellant's statement to Mendoza was not written
voluntarily.

 Appellant testified that Mendoza told him what to write in his statement. Appellant
further stated that when he refused to write the statement, Mendoza threatened to place
him in jail.

III. Legal Sufficiency of the Evidence

 In assessing the legal sufficiency of the evidence to support a criminal conviction,
we consider all the evidence in the light most favorable to the verdict and determine
whether, based on that evidence and reasonable inferences therefrom, a rational juror
could have found the essential elements of the crime beyond a reasonable doubt. (5) The
reviewing court must give deference to "the responsibility of the trier of fact to fairly resolve
conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic
facts to ultimate facts." (6) In reviewing the sufficiency of the evidence, we should look at
"events occurring before, during and after the commission of the offense and may rely on
actions of the defendant which show an understanding and common design to do the
prohibited act." (7) Each fact need not point directly and independently to the guilt of the
appellant, as long as the cumulative force of all the incriminating circumstances is sufficient
to support the conviction. (8) Circumstantial evidence is as probative as direct evidence in
establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to
establish guilt. (9) On appeal, the same standard of review is used for both circumstantial
and direct evidence cases. (10)

IV. Discussion

 For the jury to find appellant guilty under count one, the State had to prove beyond
a reasonable doubt that (1) Jose Jimenez, (2) on or about August 15, 2005, (3) in Kleberg
County, Texas, (4) did then and there, (5) with the intent to commit theft, (6) enter (7) a
building not then open to the public, (8) without the effective consent of (9) Roger Polly, the
owner thereof, and (10) appellant, (11) did then and there (12) with the intent to promote
or assist the commission of the offense, (13) solicit, encourage, direct, aid or attempt to aid
Jose Jimenez (14) to commit the offense of burglary of a building. After reviewing all the
evidence in the light most favorable to the verdict, we find that there is no evidence to
support the contention that appellant solicited, encouraged, directed, aided, or attempted
to aid Jose Jimenez in committing burglary.

 The only witness who attempts to implicate appellant for the offense charged is
Mendoza, and this is done through his presentation of appellant's written statement. The
statement largely reveals that appellant was aware that Hernandez and Jimenez had
stolen items from Polly; it further reveals that appellant may have been present during
these thefts. Appellant's mere presence and knowledge of the crime, however, is
insufficient to support his conviction for the crime. (11)

 The only evidence supporting appellant's guilt under a party theory is the following
excerpt from appellant's statement: "When we were working at Mr. Polly's home Jose
would tell me to watch to see if Mr. Polly was coming and he told me to whistle or throw a
rock at the shed." This excerpt, however, does not establish that appellant actually stood
watch and alerted Jimenez to the presence of others; it simply indicates that appellant was
asked to do so, without any indication as to whether he actually complied. We are thus
confronted with the question as to whether the jury could reasonably conclude that
appellant complied with Jimenez's requests.

 The Texas Court of Criminal Appeals recently addressed the proper use of
"inference stacking" in criminal legal sufficiency review. In Hooper v. State, the court
stated:

 Under Jackson v. Virginia, courts of appeals assessing legal sufficiency are
to consider all the evidence in the light most favorable to the verdict and
determine whether, based on that evidence and reasonable inferences
therefrom, a rational juror could have found the essential elements of the
crime beyond a reasonable doubt.

 

 Under the Jackson test, we permit juries to draw multiple reasonable
inferences as long as each inference is supported by the evidence presented
at trial. However, juries are not permitted to come to conclusions based on
mere speculation or factually unsupported inferences or presumptions. To
correctly apply the Jackson standard, it is vital that courts of appeals
understand the difference between a reasonable inference supported by the
evidence at trial, speculation, and a presumption. A presumption is a legal
inference that a fact exists if the facts giving rise to the presumption are
proven beyond a reasonable doubt. . . . In contrast, an inference is a
conclusion reached by considering other facts and deducing a logical
consequence from them. Speculation is mere theorizing or guessing about
the possible meaning of facts and evidence presented. A conclusion
reached by speculation may not be completely unreasonable, but it is not
sufficiently based on facts or evidence to support a finding beyond a
reasonable doubt.

 

 As stated above, juries are permitted to draw multiple reasonable
inferences from the evidence (direct or circumstantial), but they are not
permitted to draw conclusions based on speculation. . . . (12)


In the instant case, concluding that appellant aided Jimenez in committing burglary would
be predicated upon factually unsupported inferences or presumptions. The testimony of
Polly, Hernandez, Jimenez, and appellant does not provide any support for such a
conclusion. Therefore, concluding that appellant complied with Jimenez's requests would
be based on mere speculation--"mere theorizing or guessing about the possible meaning
of facts and evidence presented." (13) Because the jury could not, on speculation alone,
find--beyond a reasonable doubt--that appellant solicited, encouraged, directed, aided
or attempted to aid Jimenez in committing burglary, we find that the evidence is legally
insufficient to support appellant's conviction. Accordingly, we sustain appellant's first issue.

V. Conclusion

 We reverse the judgment of the trial court and render a judgment of acquittal.



 

 LINDA REYNA YAÑEZ,

 Justice



Do not publish. Tex. R. App. P. 47.2(b).


Memorandum opinion delivered and filed 

this the 2nd day of August, 2007. 

1. Tex. Penal Code Ann. § 30.02(a)(1) (Vernon 2003).
2. Because we conclude that the evidence is legally insufficient to sustain appellant's conviction, we
need not address appellant's remaining issues. See Tex. R. App. P. 47.1.
3. The propriety of Jimenez's conviction is not an issue before this Court.
4. Testimony at trial appears to reveal that Jimenez and appellant did not live at the same location.
5. Jackson v. Virginia, 443 U.S. 307, 318-19 (1979); Powell v. State, 194 S.W.3d 503, 506 (Tex. Crim.
App. 2006); Guevara v. State, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004).
6. Jackson, 443 U.S. at 318-19.
7. Cordova v. State, 698 S.W.2d 107, 111 (Tex. Crim. App. 1985).
8. See Johnson v. State, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993) ("It is not necessary that every
fact point directly and independently to the defendant's guilt; it is enough if the conclusion is warranted by the
combined and cumulative force of all the incriminating circumstances."); Barnes v. State, 876 S.W.2d 316,
321 (Tex. Crim. App. 1994); Alexander v. State, 740 S.W.2d 749, 758 (Tex. Crim. App. 1987).
9. Guevara, 152 S.W.3d at 49.
10. Id.
11. Emmett v. State, 654 S.W.2d 48, 49 (Tex. Crim. App. 1983) (holding that one is not "an accomplice
witness merely because he knew of the crime but failed to disclose it or even concealed it"); Brown v. State,
640 S.W.2d 275, 279 (Tex. Crim. App. 1982) (holding that "mere presence at the scene of a crime is
insufficient to make a witness an accomplice"); Russell v. State, 598 S.W.2d 238, 249 (Tex. Crim. App. 1980);
Arney v. State, 580 S.W.2d 836, 839 (Tex. Crim. App. 1979), abrogated in part on other grounds by Giesberg
v. State, 984 S.W.2d 245, 247-48 (Tex. Crim. App. 1998).
12. Hooper v. State, 214 S.W.3d 9, 15-16 (Tex. Crim. App. 2007) (emphasis added; citations and
footnotes omitted).
13. Id. at 16.